## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | Chapter 13 |
| THOMAS W. OLICK, | : | |
| | : | |
| Debtor | : | Bky. No. 07-10880ELF |
| _____ | : | |
| | : | |
| THOMAS W. OLICK, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | Adv. No. 09-0312ELF |
| NORTHAMPTON COUNTY, | : | |
| PALMER TOWNSHIP, EASTON AREA | : | |
| SCHOOL DISTRICT, | : | |
| | : | |
| Defendants | : | |
| | : | |


# M E M O R A N D U M

## I.  INTRODUCTION

Plaintiff Thomas Olick ("the Debtor") filed a chapter 13 bankruptcy case on February 9,

2007.  His chapter 13 plan was confirmed by order dated January 22, 2008.  The confirmed plan

provides, inter alia, for payment of unpaid real estate taxes that are secured by a lien on his

residence.

On October 7, 2009, the Debtor filed an adversary complaint against the following

defendants: Northampton County, Palmer Township, and the Easton Area School District.  The

Debtor filed an Amended Complaint on December 10, 2009.[1]

The claims asserted by the Debtor arise from Defendant Northampton County's acceptance of a payment from the Debtor's mortgage lender to satisfy unpaid real estate tax obligations, including the pre-petition real estate taxes provided for in the confirmed plan. The Debtor asserts that by accepting the payment, Northampton County violated the automatic stay, "double-dipped" (by collecting payment from both the third party and the Chapter 13 Trustee on the same debt), violated a settlement agreement between the parties that resolved a prior adversary proceeding (Adv. No. 08-264) and committed various economic torts.

Two defendants presently remain in this case: Northampton County and the Easton Area School District ("EASD").[2] The Debtor asserts seven claims against those Defendants:

> Count I:    fraud
>
> Count II:   conversion

---

[1]    On December 10, 2009, the Debtor also filed a Motion to Amend the Complaint to add the City of Easton as a Defendant. The City of Easton filed an objection to the Motion to Amend, in which it also requested sanctions against the Debtor, and a Motion to Strike the Amended Complaint. On January 13, 2010, the court granted the Debtor's Motion to Amend, denied the City of Easton's Motion to Strike and its request for sanctions. The court also ordered the City of Easton to file a notice advising the Debtor and the Court whether it consents to the Court's exercise of personal jurisdiction over it without the necessity of service of the Amended Complaint and Summons in accordance with Fed. R. Bankr. P. 7004. On March 1, 2010, the City of Easton complied with the court's order and issued a Notice stating that it did not consent to the court's exercise of personal jurisdiction without service of process. The Debtor filed an objection to the City of Easton's Notice, but never effectuated service upon the City of Easton. Therefore, the City of Easton has not been served with process and is not a party defendant in this adversary proceeding.

[2]    On June 8, 2010, the court granted a Motion to Approve Stipulation of Settlement between the Debtor and Palmer Township. The adversary proceeding was marked discontinued with prejudice as to Defendant Palmer Township. Therefore, Palmer Township is no longer a defendant in this adversary proceeding.

Count III:    violation of the automatic stay[3]

Count IV:    harassment

Count V:    breach of contract

Count VI:    violation of the Racketeer Influenced and Corrupt Organizations Act
("RICO"), 18 U.S.C. §§ 1961-1968.

Count VII:    filing fraudulent creditor claims

All three parties have filed motions for summary judgment. The motions are ready for

disposition.[4]

For the reasons discussed below, the Debtor's motion will be denied and the Defendants'

respective motions will be granted. Accordingly, judgment will be entered in favor of both

---

[3]    The pro se Complaint does not specify whether the Debtor is invoking the statutory remedy
set forth 11 U.S.C. §362(k) or the court's contempt power. Both are potential remedies for a violation of
the automatic stay. E.g., In re Copley, 383 B.R. 621, 630-31 (Bankr. S.D.W. Va. 2008); In re Wagner, 74
B.R. 898, 902-03 (Bankr. E.D. Pa. 1987). The difference in the two proceedings is that punitive damages
can be recovered under § 362(k) whereas they are likely not recoverable for contempt. E.g., In re Bowers,
2010 WL 2403877 (Bankr. D. Dist. Colo. June 15, 2010). Because the Debtor is requesting punitive
damages, I will interpret the Complaint as asserting a claim under §362(k).

[4]    The Debtor filed his Motion for Summary Judgment on all claims against both defendants
on June 23, 2010. (Adv. No. 09-312, Doc. Entry # 71). In addition to filing a response to the Debtor's
Motion, (Adv. No. 09-312, Doc. #'s 73, 76), EASD filed a Cross-Motion for Summary Judgment on all
claims on August 3, 2010. (Adv. No. 09-312, Doc. #'s 81 & 82). Defendant Northampton County also
responded to the Debtor's summary judgment motion. (Adv. No. 09-312, Doc. # 75). As a result, on
August 4, 2010, I canceled a pre-trial conference previously scheduled for August 12, 2010 and issued a
scheduling order for filing responses to the pending motions, as well a time table for any cross-motion
Defendant Northampton County might wish to file. (Adv. No. 09-312, Doc. # 83). On August 19, 2010,
Defendant Northampton County filed its Cross-Motion for Summary Judgment on all claims. (Adv. No.
09-312, Doc. # 91). All responses were timely submitted to all respective motions.

Defendants and against the Debtor.[5]

## II. FACTS

The following facts are undisputed:

1.    The Debtor filed this bankruptcy case on February 9, 2007.

2.    On August 6, 2007, Northampton County filed two proofs of claim: Claim No. 7 and Claim

       No. 8.

3.    Claim No. 7 was for $1,881.79 in unpaid taxes for years 2006 and 2007 with respect to

       certain real estate located at 4014 Crestview Avenue ("the Property").

4.    Claim No. 8 was for $5,952.84 in unpaid taxes for years 1995, 1996, 2004, 2006 and 2007

       with respect to real estate located at 1220-22 Chidsey Street.

5.    The Debtor filed objections to Claim Nos. 7 and 8 on August 9, 2007.

6.    On October 10, 2007, after a hearing on the Debtor's objections, the court allowed Claim

       No. 7 in the amount of $1,553.82 and disallowed Claim No. 8 in its entirety. (Bky. No. 07-

       10880, Doc. # 128).

---

[5]      Like all federal courts, the bankruptcy court has an independent duty to satisfy itself that it
has subject matter jurisdiction over any pending matter.  See, e.g., Nesbit v. Gears Unlimited, Inc., 347
F.3d 72, 76-77 (3d Cir. 2003), cert. denied, 541 U.S. 959 (2004); Shieldalloy Metallurgical Corp. v. New
Jersey Dept. of Environmental Protection, 2010 WL 4023433, at *3 n.7 (D.N.J. Oct. 14, 2010);  In re
Spree.com Corp., 295 B.R. 762, 768 (Bankr. E.D. Pa. 2003).  The claim for violation of the automatic
stay under 11 U.S.C. §362(k) is a cause of action created under the Bankruptcy Code.  Therefore, the court
has jurisdiction because the claim "arises under" the Code.  See 28 U.S.C. §1334(b).  Because the
remaining allegations involve conduct taking place within the administration of the Debtor's chapter 13
bankruptcy case, implicate the integrity of the bankruptcy process and are "inseparable from the
bankruptcy context," the claims "arise in" the bankruptcy case.  See In re Mullarkey, 536 F.3d 215, 223-
24 (3d Cir. 2008).

7.   EASD did not file a proof of claim in the Debtor's bankruptcy case.[6]

8.   By order dated January 22, 2008, the court confirmed the Debtor's Fifth Amended Chapter

     13 Bankruptcy Plan ("the Confirmed Plan"). (Bky. No. 07-10880, Doc. # 150).

9.   The Confirmed Plan provides for the Chapter 13 Trustee ("the Trustee") to distribute

     $1,553.82 to Northampton County on account of Claim No. 7.  (Bky. No. 07-10880, Doc.

     # 136).

10.  On February 18, 2008, Northampton County received a payment of $269.26 from the

     Trustee.  (Aff. of Cindy Hoffer at ¶3) (Adv. No. 09-0312, Doc. #91).

11.  In September 2008, the Debtor filed an adversary complaint against Northampton County

     Tax Claim Bureau, City of Easton, EASD, and Northampton County, alleging that

     Northampton County was wrongfully seeking to collect pre-petition claims for taxes in

     violation of the orders of the Bankruptcy Court.  (See Adv. No. 08-264, Doc. # 1) ("the

     First Adversary Proceeding").  In the Complaint, the Debtor asserted claims for (1) "Filing

     of Fraudulent Creditors Claims;" (2) Conversion; (3) Violation of the Automatic Stay; and

     (4) "Harassment."

12.  In April 2009, the First Adversary Proceeding was resolved by a Stipulation of Settlement in

     which Northampton County, Northampton County Tax Claim Bureau, the City of Easton

     and EASD agreed that they would not take any action to collect pre-petition taxes from the

     Debtor except for distributions from the Trustee in accordance with the Confirmed Plan.

     (Adv. No. 08-264, Doc. #'s 70 & 71).

13.  The court approved the April 2009 Stipulation of Settlement by orders dated June 16, 2009

---

[6]    The City of Easton on filed two proofs of claim (Claim Nos. 5 and 6), but EASD did not.

and July 2, 2009.  (Adv. No. 08-264, Doc. #'s 80, 83).

14.    On September 10, 2009, the BAC Tax Services Corporation sent Northampton County an

inquiry via facsimile requesting information regarding outstanding real estate taxes due and

owing on the Property.  (Aff. of Cindy Hoffer at ¶4) (Adv. No. 09-0312, Doc. #91).

15.    In response to the inquiry received from the BAC Tax Services Corporation, Northampton

County prepared a real estate tax certification indicating that the total tax balance then due

and owing on the Property was $12,978.81, which included the amount of $1,284.56 that

Northampton County calculated as remaining due on Claim No. 7. (Id. at ¶ 5).

16.    On September 14, 2009, Northampton County received two checks from Bank of America

totaling $12,978.81.  (Id. at ¶ 6).

17.    Northampton County accepted the payment from Bank of America in satisfaction of the

then-outstanding pre-petition and post-petition real estate taxes due on the Property.  (Id. at

¶¶ 6-8).

18.    On March 8, 2010, Northampton County received an additional distribution from the

Trustee in the amount of $18.07. (Id. at ¶ 9).

19.    On March 29, 2010, the Debtor filed a Motion ("the March 2010 Motion"), in which he

requested, inter alia, the entry of an order declaring Claim No. 7 as paid in full and

discontinuing any further distribution on the claim.  (Bky. No. 07-10880, Doc. # 177).

20.    On April 28, 2010, the court entered an order granting the March 2010 Motion "by

agreement."  (Bky. No. 07-10880, Doc. # 196).  The order states that "[b]y agreement with

the holder of Claim No. 7, the Trustee shall make no further distribution on account of

Claim No. 7 because the unpaid balance due on the claim has been paid by a third party."

(Id.).

21.   At no time has Northampton County assigned its interest in Claim No. 7 to Bank of America

or any other third party.  Nor did Northampton County enter into any agreement with any

third party with respect to the collection of any taxes from the Debtor.  (Aff. of Cindy

Hoffer ¶10) (Adv. No. 09-0312, Doc. #91).


### III.  SUMMARY JUDGMENT STANDARDS


Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment should be granted

when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that

there is no genuine issue as to any material fact and that the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(c).[7]  The standard for evaluating a summary judgment motion

is well established and has been stated in numerous written opinions in this district.  E.g., In re

Lilly, 2006 WL 3859128, at *2 (Bankr. E.D. Pa. Oct. 27, 2006) (per FitzSimon, J.); In re

Klayman, 333 B.R. 695, 698-99 (Bankr. E.D. Pa. 2005) (per Raslavich, J.); In re Lacheen, 2005

WL 1155257, at *2 (Bankr. E.D. Pa. Apr. 28, 2005) (per Sigmund, J.); In re Lewis, 290 B.R.

541, 545 (Bankr. E.D. Pa. 2003) (per Carey, J.); In re Newman, 304 B.R. 188, 192-93 (Bankr.

E.D. Pa. 2002) (per Fox, J.).

Before a motion for summary judgment may be granted, the court must find that the

motion alleges facts that, if proven at trial, would require a directed verdict in favor of the

---

[7]     Fed. R. Civ. P. 56 is applicable to this adversary proceeding by operation of Fed. R.
Bankr. P. 7056.

movant.  See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  If the movant

meets this initial burden, the responding party may not rest on his or her pleadings, but must

designate specific factual averments through the use of affidavits or other permissible evidentiary

material that demonstrate a triable factual dispute.  Celotex Corp. v. Catrett, 477 U.S. 317, 324

(1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-50 (1986).  Such evidence must be

sufficient to support a factfinder's factual determination in favor of the nonmoving party.  Id.

Evidence that merely raises some metaphysical doubt regarding the validity of a material fact is

insufficient.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

    In considering the evidentiary matter submitted in support of and in opposition to a

summary judgment motion, the court's role is not to weigh the evidence, but only to determine

whether there is a disputed, material fact for determination at trial.  Anderson, 477 U.S. at 247-

50.  A dispute about a "material" fact is "genuine" only if the evidence is such that a reasonable

factfinder could return a verdict for the non-moving party.  Id. at 248.  All reasonable inferences

must be drawn in favor of the nonmoving party and against the movant.  U.S. v. 717 S.

Woodward St., 2 F.3d 529, 533 (3d Cir. 1993).

    The parties' respective burdens of proof also play a role in determining the merits of a

summary judgment motion.

> [W]here the movant is the defendant, or the party without the burden of proof on
> the underlying claim, the movant still has the initial burden of showing the court the
> absence of a genuine issue of material fact, but . . . this does not require the movant
> to support the motion with affidavits or other materials that negated the opponent's
> claim. In contrast, where . . .  "the party moving for summary judgment is the
> plaintiff, or the party who bears the burden of proof at trial, the standard is more
> stringent." National State Bank v. Federal Reserve Bank, 979 F.2d 1579, 1582 (3d
> Cir.1992).

Newman, 304 B.R. at 193 (quoting Adams v. Consol. Rail Corp., 1994 WL 383633, *1-2 (E.D.

Pa. July 22, 1994)) (internal citations omitted).

Thus, with respect to the pending cross motions for summary judgment, for the Defendants to obtain summary judgment on any of the claims asserted by the Debtor, they must demonstrate either that material facts negating at least one element of the claim are not in dispute <u>or</u> that there is an absence of evidence to create a triable issue regarding at least one necessary element of the claim.  The Debtor (as the plaintiff) has a different burden.  To obtain summary judgment on any or all of his claims, he must show that there are no material facts in dispute <u>and</u> that there is evidence supporting each element of the claim sufficiently probative that no reasonable fact-finder would disbelieve the evidence.  <u>See, e.g.</u>, <u>Newman</u>, 304 B.R. at 194.

## IV.  NORTHAMPTON COUNTY'S MOTION

I begin with the motion for summary judgment filed by Northampton County.

I conclude that there are no disputed issues of material fact and that Northampton County is entitled judgment as a matter of law on every claim raised by the Debtor.

### Count I – Fraud

To establish fraud under Pennsylvania law, a plaintiff must prove: (1) misrepresentation of material fact; (2) scienter; (3) intention by the declarant to induce action; (4) justifiable reliance by the party defrauded upon the misrepresentation; and (5) damages to the party defrauded as a proximate result.  <u>E.g.</u>, <u>Ross v. Foremost Ins. Co.</u>, 2010 WL 2332944, at *6 (Pa. Super. 2010).

The Debtor claims that Northampton County used false and misleading statements to file Claim No. 7 and/or that Claim No. 7 is the false and misleading statement giving rise to his claim for fraud. (See Pl.'s Answer in Opp'n to Def. Northampton County's Mot. for Summ. J. at 7). He suggests that Northampton County knew, or should have known, that the pre-petition taxes it sought in Claim No. 7 were already paid by the Debtor and/or Trustee. Id.

The frivolous nature of this claim is apparent from a simple time line derived from the undisputed facts.

The Debtor filed his bankruptcy case on February 9, 2007. Northampton County filed its proof of claim on August 7, 2007. The claim was allowed, in large part, on October 7, 2007. Northampton County was first contacted by Bank of America's agent regarding the status of the pre-petition taxes on September 10, 2009.

From this time line, it is obvious that Northampton County's representation to the court – that a pre-petition debt existed – was true at the time the proof of claim was filed. Indeed, the claim was allowed by this court after a hearing. The Debtor has not explained (or supported with any evidence) the nature of the factual misrepresentation he contends Northampton County has made. In the absence of any evidence of a misrepresentation, the fraud claim must be dismissed.


**Count II – Conversion**

Under Pennsylvania law, "conversion is the deprivation of another's right of property in, or use or possession of, chattel, without the owner's consent and without lawful justification." Bernhardt v. Needleman, 705 A.2d 875, 878 (Pa. Super. 1997). Conversion "is predicated on interference with dominion or control over the chattel incident to some general or special

-10-

ownership rather than on damage to the physical condition of the chattel." Baram v. Farugia 606 F.2d 42, 43 (3d Cir. 1979).

It appears that the Debtor bases this claim on his assertion that Northampton County received money from the Trustee and/or Bank of America on account of its claim against the Debtor, but has not applied those payments to the outstanding real estate tax indebtedness. (Am. Adv. Compl., ¶¶34, 82-83). The record, however, is directly to the contrary. Northampton County expressly acknowledged that it received funds on the Debtor's behalf for payment of taxes and, as a direct result, has marked the obligation for those taxes as satisfied. (See Aff. of Cindy Hoffer at ¶7-8). Furthermore, this court's April 27, 2010 order determining that the Trustee is no longer obligated to make payments for pre-petition taxes in satisfaction of Claim No. 7, which was entered by agreement, manifests Northampton County's acknowledgment that it applied the payments it received against the pre-petition debt. There is simply is no evidence that any of the Debtor's property has been converted by Northampton County. Because the Debtor has not met his burden of proof on the issue, Northampton County is entitled to summary judgment on Count II.

### Count III –  Violation of the Automatic Stay (11 U.S.C. §362(k))

Under the Bankruptcy Code, the filing of a bankruptcy petition operates as a stay of, inter alia:

- any act to obtain possession of property of the estate or from the estate or to exercise control over property of the estate, see 11 U.S.C. §362(a)(3);

- any act to collect, assess, or recover a claim against the debtor that arose before the

commencement of the case under this title, <u>see</u> 11 U.S.C. §362(a)(6).

In Count III, the Debtor asserts a claim for violation of the automatic stay pursuant to 11 U.S.C. §362.  As stated earlier, I will treat the claim as being asserted under 11 U.S.C. §362(k). In order to sustain his claim under §362(k), the Debtor must demonstrate that Northampton County willfully directed or participated in some action to collect the pre-petition real estate taxes or obtain or exercise control over property of the estate.[8]

Northampton County makes a two-step argument in support of its request for summary judgment on Count III.

First, Northampton County posits that the money Bank of America paid Northampton County to satisfy the outstanding real estate taxes was <u>not</u> property of the Debtor's estate, pointing out that the Debtor has neither asserted nor offered any evidence that he had any property interest in those funds.  Therefore, Northampton County's acceptance of those funds did not involve possession or control of estate property and cannot be a violation of 11 U.S.C. §362(a)(3).

Second, Northampton County analogizes the transaction that occurred between Bank of America and itself as akin to the transfer of a claim under Fed. R. Bankr. P. 3001(e) and argues that it took no action, within the meaning of §362(a), to collect unpaid real estate taxes.

I agree with both of these arguments.

The Debtor has come forward with no evidence to support a finding that he had any property interest in the payment Bank of America made to Northampton County.  Therefore, he

---

[8]    Section 362(k) provides, in pertinent part: "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

has not met his burden of proof on summary judgment to establish that a violation of §362(a)(3)

occurred.  In the absence of a violation of §362(a), there is no §362(k) claim.

Nor is there any evidence that Northampton County took any affirmative action to obtain

the payment it received from Bank of America.  Rather, Northampton County simply complied

with a request made by Bank of America for information  –  a statement of the amount of the

outstanding taxes on the Property.  Thereafter, it simply accepted payment from Bank of America

for the full amount of that liability.  See generally In re Zotow, 432 B.R. 252, 260 (B.A.P. 9th Cir.

2010) (receipt of payments from chapter 13 trustee does not violate the automatic stay even if

mortgage lender later misapplied the payments).

Northampton County analogizes its conduct to that of a creditor that accepts money and, in

return, assigns its claim to a third party.  I find the analogy apt and conclude, as a matter of law,

that its acceptance of the payment from Bank of America did not violate the automatic stay.

The court rules expressly contemplate that a creditor may transfer its claim to a third party

for value after the commencement of the case.[9]  And, case law firmly establishes the legal principle

that the post-petition transfer of a claim from a creditor to an assignee does not violate the

automatic stay.  Matter of Georgia Steel, Inc., 71 B.R. 903, 909 (Bankr. M.D. Ga. 1987)

("automatic stay provisions of the Bankruptcy Code do not prohibit a creditor of a debtor from

transferring any interest or claim it might have against the debtor's bankruptcy estate to a third

party"); accord In re Altman, 248 B.R. 475, 477 n.2 (Bankr. D. Conn. 2000); In re Layton, 220

---

[9]      Fed. R. Bankr. P. 3001(e)(2) and (4) set forth certain procedural requirements upon the
post-petition transfer of a claim by a creditor to a third party for value.  See generally In re Kincaid, 388
B.R. 610, 616-17 (Bankr. E.D. Pa. 2008).

-13-

B.R. 508, 515 (Bankr. N.D.N.Y. 1998); see generally In re Hernandez, 2009 WL 4639645, at *6

(Bankr. S.D. Tex. Dec. 7, 2009) (secured creditor's post-petition assignment of note did not

transfer estate property and did not violate §362(a)(4) or (5)).

If the acceptance of money as part of a post-petition assignment of a claim does not violate

the automatic stay, I fail to see how the acceptance of money from a third party in satisfaction of

the claim violates the stay.

Further, it is undisputed that Northampton County has given the Debtor (upon Debtor's

request via motion to the court) full credit for those payments and has agreed to not seek any

further distribution from the Trustee on account of its allowed claim.  Thus, it is difficult to see

how Northampton County's actions have prejudiced the Debtor.[10]

For these reasons, I will grant summary judgment in favor of Northampton County on

Count III.

_____

[10]      I am aware that in a separate adversary proceeding against Bank of America (Adv. No.
10-055), the Debtor claims that he has been prejudiced by Bank of America's payment and asserts claims
against Bank of America similar to those asserted against Northampton County in this proceeding.

In Adv. No. 10-055, the Debtor asserts that Bank of America is the mortgage holder on his
residential property and that after Bank of America paid the pre-petition tax delinquency (presumably
based on authority provided in the parties' mortgage agreement), it demanded immediate repayment from
the Debtor of the sums it had advanced to Northampton.  The Debtor asserts that he has been prejudiced in
two ways.  First, under the terms of his mortgage, Bank of America may demand immediate repayment of
the sums it advanced to satisfy the pre-petition delinquent taxes  –  even though the Debtor's confirmed
chapter 13 plan permits him to pay that obligation to Northampton County over an extended period of time.
Second, the Debtor asserts that the escrow advance and demand for payment interfered with his right to
obtain benefits under Pennsylvania's Homeowner's Emergency Mortgage Assistance Program, 35 P.S.
§1680.401c - 1680.412c.

Without determining either the veracity the Debtor's allegations or the merits of the
Debtor's claims against Bank of America in Adv. No. 10-055 (as they will be addressed in that adversary
proceeding), those contentions and claims do not change the fact that Northampton County did nothing
other than accept payment from a third party and, ultimately, treat its pre-petition claim as satisfied.
Northampton County's conduct does not violate the automatic stay.

### Count IV - Harassment

In Count IV, the Debtor alleges that the Defendants participated in conduct that constitutes "harassment."  In particular, the Debtor claims that his residential real property was publicly listed for sheriff's sale in the media, including, but not limited to, the Easton Express Newspaper, as a restult of which he suffered embarrassment, emotional distress and less favorable standing in the community.  (See Pl.'s Am. Compl. at ¶129).

"Harassment" has not yet been recognized as an actionable tort in Pennsylvania.  See Utz v. Johnson, 2004 WL 1368824, at *1-2 (E.D. Pa. June 16, 2004).  And, considerable doubt exists whether Pennsylvania will ever do so.  See id.  However, even assuming that Pennsylvania would recognize such a tort, the Debtor has not met his burden of proof on this claim because he has not come forward with any evidentiary matter in support of the claim.

First, there is no evidence in the record supporting the allegation that his property was "publicly list[ed]" in the "public media"  – whatever that means.  Nor is there any evidence explicating how this asserted conduct affected the Debtor negatively or resulted in any damages. In short, the Debtor has not backed up his rambling Amended Complaint with any evidence.

Furthermore, a requisite element of the tort of "harrassment" is that the alleged tortious conduct be without justification, or that it served no legitimate purpose.  See Restatement (Second) of Torts § 870 (1979) (requiring that tortious conduct be "not justifiable under the circumstances"); 18 Pa. Cons.Stat. § 2709  (requiring for violation that person "commit[ ] acts which serve no legitimate purpose").  Again, the Debtor has not made any factual record from which the court could conclude that whatever Northampton County did was without justification or with no legitimate purpose.  Therefore, summary judgment is granted in favor of Northampton

County on Count IV.

### Count V – Breach of Contract

A cause of action for breach of contract requires proof of (1) the existence of a contract;

(2) the breach of a duty imposed by the contract; and (3) resultant damages.  E.g., Williams v.

Nationwide Mut. Ins. Co., 750 A.2d 881, 884 (Pa. Super. 2000).

The Debtor contends that Northampton County breached the court-approved April 2009

Stipulation of Settlement from the First Adversary Proceeding by accepting payment from Bank of

America for the full balance of outstanding taxes.  The relevant terms of the April 2009 Stipulation

of Settlement provides:

> will not take any action of any nature to collect claims for taxes that were due as of
> the date of filing of the Chapter 13 Bankruptcy Petition and acknowledge that to
> the extent that those claims are allowed, they will be fully satisfied upon receipt of
> the amounts allowed by the Bankruptcy Court from the Trustee in Bankruptcy.

It further provides that:

> Should the Northampton County . . . take any steps to collect the prepetition claims
> for taxes, through inadvertence or otherwise, this Stipulation of Settlement shall be
> deemed a full defense to any such claims or actions and may be presented to
> specified public agency or authority as proof that all prepetition claims for taxes
> that are allowed will be satisfied through the bankruptcy process and no other.

(See Adv. No. 08-264, Doc. # 82).

The Debtor has not met his burden on summary judgment because he cannot establish that

any breach of the agreement occurred.

Northampton County's essential obligation under the agreement was to comply with the

automatic stay, i.e., to take no action to collect its pre-petition tax claim.  As explained earlier in

the discussion of Count III, there is no evidence that Northampton County made any attempt to

collect any of the tax liability.  The record reflects only that Northampton County complied with a

request for information and then accepted payment from Bank of America.

Even if Northampton County's acceptance of the funds provided by Bank of America was

"an action  . . . to collect claims" as contemplated by the settlement agreement (and also as

explained earlier), the Debtor has produced no evidence he has been damaged by Northampton

County actions.

### Count VI – Violation of RICO

In Count VI of the Amended Complaint, the Debtor asserts that Northampton County

violated RICO.  He alleges that Northampton County is an enterprise as defined by RICO and that

Northampton County engaged in numerous acts of fraudulent solicitation through the U.S. Mail.

(See Pl.'s Am. Compl. ¶¶ 143-144).

The RICO statute provides:

> It shall be unlawful for any person employed by or associated with any enterprise
> engaged in, or the activities of which affect, interstate or foreign commerce, to
> conduct or participate, directly or indirectly, in the conduct of such enterprise's
> affairs through a pattern of racketeering activity or collection of unlawful debt.

See 18 U.S.C. § 1962(c).

A cause of action for a violation of RICO requires a Debtor establish four elements: (1)

conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity.  See, e.g., Lum v.

Bank of Am., 361 F.3d 217, 223 (3d Cir. 2004).  In order to recover the treble damages permitted

by the RICO statute, plaintiffs must prove all elements of a civil RICO claim.  Sedima, S.P.R.L. v.

Imrex Co., Inc., 473 U.S. 479, 496 (1985).

Here, the Debtor's RICO claim, which seems to hinge on mail fraud, likely fails to satisfy

every required element.  For sake of brevity, I will limit my discussion to two deficiencies.

The Third Circuit has held that where a plaintiff relies on mail fraud as a basis for a RICO

violation, the allegations of fraud must comply with Fed. R. of Civ. P. 9(b).  See Lum, 361 F.3d at

224-225; Warden v. McLelland, 288 F.3d 105, 114 (3d Cir. 2002); accord Freedom Medical, Inc.

v. Gillespie, 634 F. Supp.2d 490, 509 (E.D. Pa. 2007).  A plaintiff can satisfy this requirement by

pleading the "date, place or time" of the fraud, or through "alternative means of injecting precision

and some measure of substantiation into their allegations of fraud." Seville Indus. Mach. Corp. v.

Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984).

 Moreover, to establish a "pattern" the plaintiff must prove at least two (2) acts of

racketeering activity within a ten year period.  See 18 U.S.C. § 1961(5).  Courts have since coined

the two acts of racketeering activity, the "predicate acts."  Breslin v. Brainard, 2003 WL

22351297, at *11 (E.D. Pa. Oct. 14, 2003).  When liability is premised on violations of the federal

mail fraud statute as the predicate acts, a  plaintiff must establish "(1) the defendant's knowing and

willful participation in a scheme or artifice to defraud, (2) with the specific intent to defraud, and

(3) the use of the mails or interstate wire communications in furtherance of the scheme." United

States v. Antico, 275 F.3d 245, 261 (3d Cir. 2001) (citing United States v. Clapps, 732 F.2d 1148,

1152 (3d Cir. 1984)). "A scheme or artifice to defraud need not be fraudulent on its face, but must

involve some sort of fraudulent misrepresentations or omissions reasonably calculated to deceive

persons of ordinary prudence and comprehension."  Brokerage Concepts, Inc. v. U.S. Healthcare,

Inc., 140 F.3d 494, 528 (3d Cir. 1998) (quoting Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d

-18-

1406, 1415 (3d Cir. 1991)).

Here, the only conduct grounding the Debtor's mail fraud claim is the single response/communication of Northampton County to Bank of America's routine request for information regarding outstanding tax liability in which Northampton County provided a real estate tax certification.  Even if I were to overlook the fact that Debtor has failed to comply with the heightened pleading requirement of Fed. R. Civ. P. 9(b) (an issue that the Defendant has not raised), the Debtor lacks any evidence that there was any misrepresentation within Northampton County's communication, that Northampton County had any illicit objective regarding that communication or that the Northampton County had an intent to defraud by use of that communication.  Therefore, I cannot deem this conduct a "predicate act" for purposes of RICO and the Debtor's RICO claim must fail as a matter of law.  See Franks v. Food Ingredients Intern., Inc., 2010 WL 3046416, at *4 (E.D. Pa. July 30, 2010) (failure to plead mail fraud with the requisite specificity prevents it from being considered a predicate act).

Summary judgment is also warranted because the record is insufficient to establish the requisite "pattern."  The Debtor's reliance on one action is fatal to his RICO claim because he has no evidence of two or more predicate acts that are (1) "related" and (2) "amount to or pose a threat of continued criminal activity."  H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239-40 (1989).[11]  Therefore, summary judgment will be entered in favor of Northampton County

---

[11]    The allegations of predicate acts cannot constitute a RICO "pattern" unless both the "relatedness" and "continuity" tests are satisfied.  Kehr Packages, 926 F.2d at 1412.  In Stoss v. Singer Financial Corp., 2010 WL 678115 (E.D. Pa. Feb. 24, 2010), the court recently explained these two requirements with reference to the Supreme Court's decision in H.J. Inc. v. Northwestern Bell Tel. Co.:

The relatedness inquiry focuses on whether the alleged predicate acts "are interrelated by distinguishing characteristics and are not isolated events."  "'Continuity' is both a closed-and

(continued...)

-19-

on Count VI.

## Count VII - Filing Fraudulent Creditor Claims

In Count VII, the Debtor alleges a cause of action for the "filing of fraudulent creditors claims" against all Defendants.  The allegations appear to assert that Claim No. 7 was "fraudulent" because Northampton County already recovered the allowed tax payments from Bank of America, yet sought double recovery from the Trustee for the satisfaction of the claim.

Assuming arguendo that a private cause of action for damages exists for filing a fraudulent claim in a bankruptcy case,[12] this final count is nothing more than a repackaging of the state law claim for fraud alleged in Count I and fails for the same reasons.

## V.

Debtor's theory of liability against EASD is based entirely on the factual premise that Northampton County is an "employee and/or agent" of and is "paid to collect taxes" on behalf of EASD.  (Debtor's Ans. to EASD Mot. for Summ. J. at 1).  The Debtor contends that EASD

---

[11](...continued)
open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." The Court observed that "Congress was concerned in RICO with long-term criminal conduct" and ruled therefore that "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy [the continuity] requirement."

2010 WL 678115, at *7 (internal citations omitted).

[12]        This is a doubtful proposition.  See In re Joubert, 411 F.3d 452 (3d Cir. 2005).  In light of my disposition of the Debtor's claim on other grounds, I do not decide the issue.

admitted in the April 2009 Stipulation of Settlement filed in the First Adversary Proceeding that it

employed Northampton County to act as its agent to collect pre-petition taxes of the Debtor and to

file Claim No. 7, thus rendering it equally responsible for any and all actions taken by Northampton

County.  (See Debtor's Resp. to Def. EASD's Ans. To Debtor's Mot. for Summ. J. at 2).

After reviewing the Stipulation in the First Adversary Proceeding, I agree that it includes

an admission that Northampton County acts as an agent of the EASD for the collection of taxes.

(See Adv. No. 08-264, Doc. # 82) (Stipulation ¶¶ 4, 6).  However, there is no evidence in the

record that an employer-employee relationship exists or existed between EASD and Northampton

County.  Therefore, I will not further discuss the Debtor's "respondeat superior" theory.[13]

As for the Debtor's agency theory, EASD cannot be liable unless the conduct of its agent,

Northampton County, was actionable. See, e.g., Tindall v. Friedman, 970 A.2d 1159 (Pa. Super.

2009) (termination of the claim against the agent extinguishes the derivative claim against the

principal).  I have already determined that Northampton County is entitled to summary judgment

on all of the Debtor's claims.  Therefore, to the extent the Debtor's claims against EASD are

derivative of his claims against Northampton County, the claims against EASD also fail.  Further,

because there is nothing in the record suggesting that EASD took any independent action with

respect to collecting any claim against the Debtor, EASD is entitled to summary judgment on all of

the Debtor's claims.

---

[13]        The doctrine of respondeat superior determines when employers will be held liable for the
actions of their employees.  CNA v. U.S., 535 F.3d 132, 146 (3d Cir. 2008).  Pennsylvania has adopted the
Restatement (Second) of Agency's definition of conduct within the scope of employment. Id. (citations
omitted); Winward v. Rhodewalt, 203 Pa.Super. 369, 372, 198 A.2d 623, 624 (1964).  Section 228 of the
Restatement provides in relevant part that the "[c]onduct of a servant is within the scope of employment if,
but only if: (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized
time and space limits; [and] (c) it is actuated, at least in part, by a purpose to serve the master. . . ."
Restatement (Second) of Agency § 228(1).

## VI.  CONCLUSION

For the reasons set forth above, the summary judgment motions of Defendants EASD and

Northampton County will be granted and the Debtor's motion for summary judgment will be

denied.  Judgment will be entered in favor of both Defendants Northampton County and EASD.


Date:  November 9, 2010                                  _____
                                                         ERIC L. FRANK
                                                         U.S. BANKRUPTCY JUDGE